371 So.2d 792 (1979)
NATIONAL SAFE CORPORATION
v.
BENEDICT AND MYRICK, INCORPORATED.
No. 63342.
Supreme Court of Louisiana.
May 21, 1979.
Frank P. Simoneaux, Claude F. Reynaud, Jr., Breazeale, Sachse & Wilson, Baton Rouge, for defendant-applicant.
Neil H. Mixon, Jr., McCollister, McCleary, Fazio, Mixon & Holliday, Baton Rouge, for plaintiff-respondent.
SUMMERS, Chief Justice.
This is a suit by National Safe Corporation, a manufacturer of bank vaults and *793 related financial security mechanical and electronic products. The suit is to collect an alleged past due account from its former Louisiana dealer Benedict & Myrick, Inc. The defendant dealer reconvened, alleging damages for losses resulting from defective shipments and for breach of the dealership contract. The latter allegation is based upon the assertion that plaintiff induced one of defendant's employees to leave that employ and become the dealer in defendant's place. The first reconventional demand has not been tried. The second was denied on plaintiff's motion for summary judgment. On appeal to the First Circuit the judgment was affirmed. 364 So.2d 169. Certiorari was granted on defendant's application.
In November 1973 National Safe Corporation solicited Benedict & Myrick, Inc. to become its distributor of security equipment in Louisiana. An agreement was entered into whereby Benedict & Myrick were to be the exclusive dealer in Louisiana to sell National's products. Benedict & Myrick also agreed to maintain employees to service, install and adequately handle all work. In the agreement National warranted its products for stipulated periods and set forth that it would assist Benedict & Myrick "in training local service and installation personnel." By its terms the November 1973 agreement could be cancelled by either party subject to 60-day written notice.
Thus the original agreement contemplated the hiring by Benedict & Myrick of additional sales and installation staff and the training of that staff by National. In fact, after the agreement was concluded, Clifford Billingslea, the Vice President and Sales Manager of National, came to Louisiana to orient Gary Paul, Benedict & Myrick's Sales Manager. In about June 1974 the sales of bank equipment had progressed to the point where Benedict & Myrick found it necessary to employ a salesman exclusively for that work. It answered a newspaper advertisement placed by Steve Sibley. After Benedict & Myrick interviewed Sibley, it took him to New Orleans where he was interviewed by Clifford Billingslea; thereafter Benedict & Myrick hired Sibley and sent him to Atlanta to be trained by National. In May 1975 the business had grown to require a full-time technician for the installation of National's products. Billingslea contacted a friend of his in the industry who recommended a technician; Benedict & Myrick hired the technician recommended through Billingslea. This was in accord with the oral understandings that Benedict & Myrick representatives testified existed from the time of the original contract, to the effect that because Benedict & Myrick had no previous experience in the safe and vault trade, National would supply and train salesmen and technicians as needed.
In May of 1975, National presented Benedict & Myrick with an amended agreement which was the same as the original one, except for the deletion of the sixty-day cancellation clause and the insertion of another which stated "This agreement can be cancelled in writing at any time by either party." This agreement was executed, and it replaced the prior agreement.
Thomas Seiter, the President of National Safe, testified that the decision was made to change the cancellation clause in the dealership agreement because National was then contemplating changing its dealership arrangements without having communicated this to Benedict & Myrick. A reasonable inference from the record indicates that Steve Sibley understood, prior to the termination of the dealership agreement, that he was to receive the new dealership.
On September 3, 1975, Seiter sent Benedict & Myrick a letter cancelling the dealership agreement. Apparently Benedict & Myrick protested the cancellation, but not before Seiter had given the new dealership to a partnership formed by Billingslea, the former Vice President and Sales Manager for National, and Sibley, the former salesman for Benedict & Myrick. Upon receipt of the protest, Seiter postponed the cancellation of the Benedict & Myrick contract and the establishment of the Billingslea-Sibley dealerships. This "abeyance" lasted *794 at most a month, and may have been less; Seiter made a trip to Louisiana to talk with Benedict & Myrick and with Sibley and thereafter Benedict & Myrick's dealership was terminated and Billingslea and Sibley were "immediately", in Seiter's words, established as the new dealers.
We are of the opinion that the Court of Appeal erred in upholding the trial court's grant of partial summary judgment. That decision was based upon the jurisprudence of this State which denies a cause of action ex delicto for inducing breach of contract, jurisprudence which the plaintiff in reconvention attacks with arguments directed to the policies and the rationale rejected by other jurisdictions of the original decision here. The position of the courts throughout the country has changed to a point where Louisiana is in a distinct minority, if not unique, in denying such an action. Significantly, the plaintiff in reconvention contends that the courts of France, with a similar codal regime of delictual responsibility, recognize inducing breach of contract as giving rise to an action ex delicto.
This case, however, does not squarely present the issue whether Louisiana should change its stance and recognize this proposed new cause of action. Had the plaintiff in reconvention alleged a cause of action for such inducement the issue would now be before this Court; in fact, however, Benedict & Myrick's reconventional demand alleged a cause of action for breach of the dealership agreement with National and pled the hiring of Sibley as one of the facts giving rise to that cause of action. This, then, is a cause ex contractu and not ex delicto, the reverse of the view taken by the Court of Appeals.
In its reconventional demand, Benedict & Myrick alleged that:
"In November 1973, National Safe Corporation solicited Benedict & Myrick to become its distributor in the State of Louisiana for bank security equipment for banks and other financial institutions, with the understanding that Benedict & Myrick would employ a special person to market the equipment of National Safe Corporation, which was done in June of 1974 when Benedict & Myrick employed one Steve Sibley (Sibley) for that purpose."
* * * * * *
"By reason of its long and favorable acquaintance with financial institutions, Benedict & Myrick developed with and through said Sibley for National Safe Corporation a great many opportunities for sales . . . ."
* * * * * *
"Benedict & Myrick now alleges that though it did not know it at that time, National Safe Corporation had already planned in May of 1975 to terminate their dealership and to deal directly with or through Sibley employed by defendant as aforesaid."
* * * * * *
"Defendant further alleges that there were still other jobs in progress, being performed, or in the process of solicitation, when plaintiff took Sibley from defendant's employ . . . ."
* * * * * *
"Benedict & Myrick, plaintiff in reconvention, further alleges that the arrangements made by National Safe to induce Sibley to leave the employ of Benedict & Myrick while both National Safe and Sibley were still under contract to Benedict & Myrick was an active breach of their contract, which by its nature obligated both parties to fair dealing with the other and this action has caused damage to Benedict & Myrick through the loss of future business of not less than FIFTY THOUSAND AND NO/100 DOLLARS ($50,000.00)."
It was in response to these allegations that National filed its motion for summary judgment. Its principal contention was that the dealership agreement entered into with Benedict & Myrick contained no clause prohibiting National from the act of solicitation of any employee of Benedict & Myrick for furtherance of the business of National. Further, the motion alleged, assuming *795 that Sibley did plan to work for National before the dealership agreement was cancelled, that fact alone does not constitute a breach of contract or any other action recognized under Louisiana law.
Article 1901 of the Civil Code requires good faith performance of all agreements. A principle of implied obligations in contracts is also stated in Article 1903 of the Code in these words: "The obligation of contracts extends not only to what is expressly stipulated, but also to everything that, by law, equity or custom, is considered as incidental to the particular contract, or necessary to carry it into effect." The effect of equity on implied obligations is expressed in Article 1964 in these terms: "Equity, usage and law supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from one of these sources." Insofar as pertinent here, the "equity intended by this rule is founded in the christian principle not to do unto others that which we would not wish others should do unto us . . . ." La.Civil Code art. 1965.
From these pronouncements we are reminded that not all obligations arising out of contract need be explicitly stated. Into all contracts, therefore, good faith performance is implied. Furthermore, everything that by equity is considered incidental to the particular contract, or necessary to carry it into effect, is also a part of all agreements. And, as Article 1964 of the Civil Code makes clear, equity will supply such incidents only as the parties may reasonably be supposed to have been silent upon from a knowledge that they would be supplied from that source.
Because there is no "clause" in the dealership contract prohibiting National from soliciting Sibley to leave Benedict & Myrick and become, with Billingslea, National's dealer instead of Benedict & Myrick, National contends there is no law in Louisiana which would consider that action on their part a breach of contract. The Civil Code Articles cited refute this contention.
It is evident from the principles announced in the Code that contracts are to be understood, not only from what is expressed, but also everything that by law, equity or custom is considered as incidental to the particular contract, or necessary to carry it into effect.
In light of these code provisions a reasonable interpretation of the contract between National and Benedict & Myrick contemplated that Benedict & Myrick would accept the advice and assistance of National in training its service and installation personnel and National's help on installations to build up its business. With this understanding Benedict & Myrick could not then expect National to offer inducements to Sibley, one of Benedict & Myrick's key employees, to leave Benedict & Myrick's employ thereby rendering its organization virtually destitute of competent help and unable to function properly thereafter. To the contrary, good faith performance of the contract would reprobate National's actions. Moreover, the implication from such an agreement, in the absence of a stipulation to the contrary, is that equity would require National to do to Benedict & Myrick that which it would wish Benedict & Myrick to do to it. La.Civil Code art. 1965. We are certain if the roles of the contracting parties were reversed National would not expect to be treated as it treated Benedict & Myrick.
On the record of this motion for summary judgment, therefore, National breached its contract with Benedict & Myrick by violating implied obligations of fair dealing which were by the Civil Code as much a part of the written dealership agreement as the obligations expressed in that document. In doing so National has rendered itself liable for the damages resulting from the breach of contract. The motion for summary judgment is therefore denied. National's motion for summary judgment only assumed for argument's sake the fact of an inducement and asserted that the plaintiff in reconvention nonetheless had no cause of action for breach of contract "Or any other action recognized under Louisiana law." It *796 does not appear that National at any time conceded the fact of inducement, nor should it be penalized for having desisted from putting that fact at issue in the summary judgment motion, for that matter was simply not the thrust of the motion.
Since this case came here on a motion for summary judgment presenting the single issue of breach of contract, and the trial court and Court of Appeal sustained the motion, there is no evidence in the record on the issue of damage for breach of contractthat question was never reached. Furthermore, the main demand, and the first issue presented by the reconventional demandthat involving Benedict & Myrick's claim for damages on account of defective shipmentshas not yet been considered.
Therefore, the case is remanded to the trial court for trial of the various demands of both parties, where the court can have the whole case before it, including Benedict & Myrick's demand for damages for contractual breach (inducement) so that all factual issues can be resolved simultaneously.
For the reasons assigned, the case is remanded to the trial court to be proceeded with in accordance with the reasons assigned herein.
DENNIS, J., concurs.
DIXON, J., dissents.