John P. DAVIS

v.

A.G. EDWARDS AND SONS, INC. et al.

Paul M. DAVIS

v.

A.G. EDWARDS AND SONS, INC. et al.

Civ. A. Nos. 85–2675, 85–2733.

United States District Court, W.D. Louisiana, Shreveport Division.

May 27, 1986.

J. Ransdell Keene, Evans, Feist, Auer & Keene, Shreveport, La., for plaintiffs.

John T. Cox, Jr., Blanchard, Walker, O'Quin & Roberts, Shreveport, La., for defendants.

## MEMORANDUM RULING

STAGG, Chief Judge.

John P. and Paul M. Davis seek treble damages, costs, and attorney's fees arising from alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. § 78a, *et seq.*, and state contract laws, La.Civ.Code articles 1906, *et seq.* This Court exercises jurisdiction pursuant to 28 U.S.C. § 1331. The defendants, A.G. Edwards and Sons, Inc. ("Edwards"), Lloyd D. Tiller Jr., and other yet unnamed Edwards employees, move to dismiss all claims on grounds of prescription, move for an award of attorney's fees pursuant to Fed.R.Civ.P. 11, and move to strike affidavits submitted in opposition to defendants' motions. For reasons hereinafter stated, the motions to dismiss federal claims on grounds of prescription are GRANTED, remaining claims submitted by plaintiffs are dismissed for lack of subject matter jurisdiction, and the motion for attorney's fees is DENIED.

THE COMPLAINTS

In September, 1985, John P. Davis and Paul M. Davis individually filed suit against A.G. Edwards and Sons, Inc. and its employee, Lloyd D. Tiller, Jr., alleging that the defendants "engaged in the manipulative and fraudulent practice of excessive and objectionable trading activity, *i.e.*, churning, with the [plaintiffs'] funds and account[s]" at A.G. Edwards and Sons, Inc. The excessive trading in these accounts was allegedly motivated by additional profit to Edwards and its agents in the form of increased commissions on purchases and sales of securities. According to the complaint, Edwards engaged in these manipulative practices with the intent to defraud and with reckless disregard for the plaintiffs' interests throughout 1980, 1981, 1982 and during most of 1983. As a result of these practices, the Davises closed their accounts with Edwards in 1983. In their September 1985 complaints, plaintiffs allege that Edwards and its employees violated the provisions of the Securities Exchange Act of 1934, specifically, § 10(b) and 17 C.F.R. § 240.14(a)–9. Plaintiffs seek damages consisting of sums equal to the loss in value of their securities portfolios, the excessive commissions charged and received by defendants, and reasonable attorney's fees and costs.

Subsequently, in October 1985, John and Paul Davis filed amending and superseding complaints, adding substantive claims and joining unknown employees at Edwards. In addition to the purported violation of federal securities laws, plaintiffs seek relief under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, asserting that the excessive and objectionable trading practices employed by the defendants were part of a scheme or conspiracy to obtain increased profits through excessive securities transactions in plaintiffs' "daily accumulation funds." Contending that the practices employed by Edwards and its associates caused losses in excess of $300,000 to Paul and John Davis, plaintiffs demand treble damages in the amount of $900,000, costs and attorneys' fees. Additionally, plaintiffs seek a mandatory injunction requiring Tiller and other unspecified employees to divest themselves of their interests in Edwards and to resign their positions as directors, officers, employees and agents thereof. Also sought is an order revoking the professional licenses of all defendants for a reasonable period of time.

In their amended complaints, plaintiffs append state law claims for breach of contract and for unjust enrichment pursuant to La.Civ.Code art. 1906, *et seq.*, and 1757. These claims arise from the same facts underlying plaintiffs' claims for violations of federal securities and racketeering laws.

## MOTIONS TO DISMISS AND FOR ATTORNEY'S FEES

Defendants move to dismiss substantive claims on the grounds of prescription and support their motions with affidavits, confirmation slips and monthly statements relating to plaintiffs' daily accumulation funds. First, the defendants assert that the federal claims prescribe no later than two years after plaintiffs knew or had reason to know of the alleged misconduct. Pointing to express allegations in plaintiffs' complaints, Edwards maintains that judicial admissions in the pleadings foreclose as untimely this action by John and Paul Davis. Furthermore, Edwards contends that

an exception to the ten-year prescriptive period otherwise controlling the pendent contract claims is found in La.R.S. 51:714, providing that an action for securities fraud is barred by the passage of two years. If this exception is not applied, assert the defendants, the specific limitation governing securities fraud is rendered meaningless. Alternatively, application of this exception is said to conform with the express provisions of Louisiana law and, if applied, would dictate dismissal of the remaining claims for failure to prosecute timely.

In conjunction with the motion to dismiss supported by matters outside the record and properly characterized by defendants as a motion for summary judgment, the defendants seek an award of attorney's fees pursuant to Fed.R.Civ.P. 11. In support of this claim, it is maintained that:

> The instant law suit, alleging securities fraud in the form of unauthorized purchases and sales of securities by the defendants through the plaintiff[s'] account[s] (churning) is totally without merit, and when viewed in context strongly suggests that it was directed only at obtaining a "nuisance settlement" from defendants.

Plaintiffs' Brief in Support of Motion for Rule 11 Sanctions, p. 1. Believing that the allegations in the complaints were formed without "reasonable inquiry" into the facts or law underlying the Davis claims, Edwards seeks sanctions in the form of reasonable attorney's fees and expenses incurred in opposing plaintiffs' allegations.

## PRESCRIPTION

Count 1 of the amended complaint alleges that the defendants used wire and mail interstate communications while engaging in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"). Edwards first notes that Congress did not enact a period of limitations in the RICO statute and suggests that federal courts must apply the state statute of limitations which governs the state cause of action bearing the clos-

est substantive resemblance to the federal cause of action.

A conflict exists between the parties concerning the cause of action bearing the closest substantive resemblance to the federal cause of action. First, defendants assert that the analogous state prescriptive period is found in La.Civ.Code art. 3492, which provides that delictual acts are subject to a liberative prescription of one year. In support of this contention, the defendants cite the official comment to art. 3492, which would extend "delictual" liability to intentional misconduct such as fraud. Defendants also rely on *Ingram Corporation v. J. Ray McDermott & Company, Inc.*, 495 F.Supp. 1321, 1324 n. 4 (E.D.La.), *reversed on other grounds*, 698 F.2d 1295 (5th Cir.1983), where the United States District Court for the Eastern District of Louisiana adopted this position. Alternatively, defendants suggest that plaintiffs' claims are basically those for securities fraud, and should follow the analogous state limitation for securities violations found in La.R.S. 51:714. Pursuant to that statute, the claim would be barred by a two-year prescriptive period.

On the other hand, the Davises assert that the "predicate acts" underlying the civil RICO claim are mail and wire fraud, carrying five-year limitation periods under federal law, and that these limitations should govern civil RICO claims. They find support for consideration of the most analogous federal limitation, as opposed to the analogous state limitation, in the Supreme Court's recent decision in *DelCostello v. Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). In that case, the court refused to apply a state limitation where a federal statute of limitations was found to better reflect the preferred balance between the substantive policies underlying the federal claim and the policies of repose underlying all limitations issues. "[W]hen a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial law

making, we have not hesitated to turn away from state law." 462 U.S. at 171–72, 103 S.Ct. at 2294–95. According to defendants, the federal statutes from which the RICO provisions were patterned, the Clayton and Sherman Anti-Trust Acts, are the most analogous federal statutes, and, in conformity with the federal interest in the uniform application of federal law, should define the appropriate statute of limitations. With the antitrust laws containing a four-year period of limitations, plaintiffs maintain that their civil RICO claims were filed timely and that the motion to dismiss should be denied.

In resolving this conflict, guidance is found in the recent Supreme Court opinion in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Addressing the issue of prescription in a § 1983 action, the Court initially declared that, where "Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local limitation as federal law if it is not inconsistent with federal law or policy to do so." *Id.* at ——, 105 S.Ct. at 1942. In following this practice, the Supreme Court set forth a structured analysis to determine the appropriate statute of limitations. *See*, 105 S.Ct. at 1943. First, the Court stated that federal law governs the "characterization" of federal claims for the purpose of defining the appropriate statute of limitations in § 1983 claims. In footnote 19, *Wilson* suggests that similar claims should be governed by federal law. 105 S.Ct. at 1944, note 19. It shall govern characterization of this RICO claim. Second, it must be decided whether all such federal claims must be characterized in the same way, or whether they should be evaluated differently depending on varying factual circumstances and the legal theories presented in each individual case. Third, the court must "characterize the essence of the claim in the pending case, and decide which state statute provides the most appropriate limiting principle." *Id.* at 1943. This characterization is to be "derived from the elements of the cause of action, and Con-

gress's purpose in providing [the cause of action]." *Id.* Lastly, as previously noted, the Court must ensure that the state limitation period is not inconsistent with federal law or policy. If an inconsistency exists, then the Court must consider the analogous federal statute in conformity with *DelCostello, supra.*

### a. A Single Characterization

The post-*Wilson* cases defining the appropriate statute of limitations for civil RICO actions, though limited in number, have generally found that a single characterization of the federal claim would effectuate the policies of uniformity and cost-effectiveness of RICO litigation. For example, in *Electronics Relays (India) Pvt. Ltd. v. Pascente*, 610 F.Supp. 648 (N.D.Ill.1985) (Hart, J.), the court found: (1) that one characterization must be adopted for all RICO actions in the State of Illinois, (2) that the RICO action is properly characterized as a private treble damages action, and (3) that the analogous state statute which also provided treble damages did not conflict with the federal policy underlying RICO. *Id.* at 650–53. Other courts addressing this issue have also provided a singular characterization of the federal RICO claim. *See, Long Grove Country Club Estates v. Village of Long Grove*, No. 82–C–6868 (N.D.Ill., Oct. 4, 1985) (Holderman, J.) [Available on WESTLAW, DCTU database]; *Newman v. Wanland*, No. 85–C–2265 (N.D.Ill., Mar. 7, 1986) (Williams, J.) [Available on WESTLAW, DCTU database]; *but see, Lawson v. Nationwide Mortgage Corp., infra* at page 712.

Applying the *Wilson* analysis to this case, this Court also concludes that a single characterization for all RICO actions in this state should be adopted. Noting first that the full breadth and scope of civil RICO is yet to be defined, courts must be wary of the unlimited capabilities of ingenious attorneys to analogize their yet undefined civil RICO claims to state forms of action. As taught by the Supreme Court in *Wilson*, to predicate the choice of the proper

statute of limitations on an analysis of the particular facts of each case would breed uncertainty and time-consuming litigation, a result not substantially conducive to the achievement of the purposes of federal statute at issue. As found by the district court in *Pascente*, the need to avoid a source of "uncertainty, and unproductive and ever increasing litigation" is just as strong in a civil RICO case as in a § 1983 case. Accordingly, a single characterization should be adopted.

### b. Essence of Claim—Fraud

Prior to the rule of decision in *Wilson*, the civil RICO action was categorized in a variety of ways. State actions found to be most analogous to civil RICO included antitrust claims, securities fraud, common-law fraud, and state verdict of RICO. Additionally, the prescriptive periods for actions based on statutes were found to be applicable. For a survey of jurisprudence defining the applicable prescriptive period in civil RICO claims, *see Pascente*, 610 F.Supp. at 650–51.

The cases applying *Wilson v. Garcia* also provide diverse characterizations of the civil RICO action. In *Pascente, supra*, the district court characterized civil RICO as essentially a private treble damages action. Reviewing the legislative history, the Court found the treble damages provision to be civil RICO's "most distinctive feature." 610 F.Supp. at 651. Noting that this remedy provides a "considerable incentive for private citizens to act as private attorneys general and a large and very tangible deterrent for those who might be thinking of violating its provisions," the private treble damages characterization was found to capture the legislative purpose. This characterization was sufficiently broad to encompass the multitude of factual bases upon which RICO could be founded. Finding that the analogous Illinois private treble damages prescriptive period of two years to be consistent with

federal policy underlying RICO, the Court applied that limitation to plaintiff's claim.[1]

Other district courts have not come to the same conclusion. In *Davis, et al. v. Colin Smith, et al.*, 635 F.Supp. 459 (N.D.Ill.1985) (Nordberg, J.), the court refused to select a limitations period on the basis of the state's view of the nature of the remedy provided by RICO. Rather, looking to the nature of the cause of action, and considering that "RICO is to be liberally construed to effectuate its remedial purpose," *see, Sedima, S.P.R.L. v. Imrex Co., Inc.,* — U.S. —, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985), the court found that the majority of civil RICO cases to be actions in fraud and applied the Illinois five-year statute of limitations to that action. In *Lawson v. Nationwide Mortgage Corp.*, 628 F.Supp. 804 (D.C.1986), the court looked to the most analogous state statute of limitations without reference to *Wilson v. Garcia.* Selecting between the three-year fraud statute of limitations and the one-year period applicable to actions to recover usurious interest charges, the longer statute of limitations was selected in light of the remedial purpose of RICO. Though the court considered whether the state limitations period was consistent with the underlying policies of the federal statute, it did not provide an overall characterization in conformity with *Wilson.*

As shown by this review, the limited number of cases attempting to characterize civil RICO, while selecting a statute of limitations which promotes the broad remedial purpose of that statute, are not consistent. In fact, consideration of the extremely broad category of "predicate acts" in light of cases affording civil RICO relief reveals the difficulty of singularly characterizing this action. Nonetheless, any attempt to do so must start with elements of this cause of action.

Title 18 § 1962(c) is the provision underlying substantially all of the civil RICO actions reviewed in preparation of this opinion. That section provides:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

The "racketeering activity" element is extremely broad, extending to criminal conduct under state law, any act "indictable" under various federal criminal provisions and any offense involving bankruptcy, securities fraud, or drug related activities punishable under federal law. 18 U.S.C. § 1961(1).[2] Upon proving that defendants

1. The *Pascente* reasoning was subsequently adopted in *Bollingbrook Properties II v. Irvin*, No. 84–C–10480, Slip Opinion at 4 (N.D.Ill. Aug. 8, 1985) (Moran, J.) [Available on WESTLAW, DCTU database].

2. Title 18 § 1961(1) provides:
"racketeering activity" means (A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year; (B) any act which is indictable under any of the following provisions of title 18, United States Code: Section 201 (relating to bribery), section 224 (relating to sports bribery), sections 471, 472, and 473 (relating to counterfeiting), section 659 (relating to theft from interstate shipment) if the act indictable under section 659 is felonious, section 664 (relating to embezzle-

ment from pension and welfare funds), sections 891–894 (relating to extortionate credit transactions), section 1084 (relating to the transmission of gambling information), section 1341 (relating to mail fraud), section 1343 (relating to wire fraud), sections 1461–1465 (relating to obscene matter), section 1503 (relating to obstruction of justice), section 1510 (relating to obstruction of criminal investigations), section 1511 (relating to the obstruction of State or local law enforcement), section 1951 (relating to interference with commerce, robbery, or extortion), section 1952 (relating to racketeering), section 1953 (relating to interstate transportation of wagering paraphernalia), section 1954 (relating to unlawful welfare fund payments), section 1955 (relating to the prohibition of illegal gambling businesses), section 2320 (relating to trafficking in certain motor vehicles or motor vehicle parts), sections 2312 and 2313 (relating to interstate transportation of stolen motor vehicles), sections 2314 and 2315 (relat-

conducted an enterprise through a pattern of "racketeering activity", a cause of action exists whenever any person is injured in his business or property by reason of such conduct. 18 U.S.C. § 1964.

It is unquestioned that the elements of civil RICO in 18 U.S.C. § 1961 *et seq.* would permit a very broad, and yet undefined, category of actions which cannot be easily placed into a simple and broad characterization. To prevent "uncertainty, confusion, and lack of uniformity in selecting an applicable statute of limitations", *Wilson v. Garcia* requires that the whole body of civil RICO actions fall within one broad characterization. The difficulty of this task is highlighted by RICO's evolution onto something which is "quite different from the original conception of its enactors." *Sedima*, 105 S.Ct. at 3287. It is recognized that the expanded scope of RICO was primarily the result of the breadth of predicate offenses, in particular, the wire, mail and securities fraud provisions. *Id.* In fact, the ABA task force on civil RICO reported that, by March, 1985, of 270 known civil RICO cases at the trial court level, 40 percent involved securities fraud, 37 percent common-law fraud in a commercial or business setting and only 9 percent involved allegations of criminal activity normally associated with professional criminals. 105 S.Ct. at 3287, citing ABA Report at 55–56. An American Institute of Certified Public Accountants survey of 132 published opinions found that 57 involved securities transactions and 38 commercial and contract disputes. Applications of the provisions of this statute, therefore, tend to support a characterization of civil RICO as an action in fraud.

Also considered in the attempt to characterize this claim is the purpose of the statute. As reviewed by the United States

Supreme Court in *Sedima*, the private treble damages action was initially proposed to the House of Representatives by Rep. Steiger, who stated that "those who had been wronged by organized crime should at least be given access to a legal remedy. In addition, the availability of such a remedy would enhance the effectiveness of Title IX's prohibitions." Hearings on S.30 before Subcommittee No. 5 of the House Committee on the Judiciary, 91st Congress, 2d Sess., 520 (1970). The bill was described in the House debate as "another example of the anti-trust remedy being adapted for use against organized criminality." 116 Congressional Record 35295 (1970). In the Senate, the treble damages action was viewed by Senator McClellan as "a major new tool in extirpating the baneful influence of organized crime in our economic life." *Id.* at 25190. In its preface to the Act, Congress declared the purpose of the Organized Crime Control Act of 1970 to be: "to seek eradication of organized crime in the United States ... by providing new remedies to deal with unlawful activities of those engaged in organized crime." Considering the purpose of the statute and the civil nature of its remedies, the Supreme Court has characterized these provisions as an attempt "to divest the association of the fruits of its ill-gotten gains." *United States v. Turkette*, 452 U.S. 576, 586, 101 S.Ct. 2524, 2530, 61 L.Ed.2d 246, (1981). The Congressional purpose in providing this action, therefore, can be summarized as a further step in deterring organized crime or racketeering activity.

The stated purpose of civil RICO is expansive. The elements defining "racketeering activity" are equally comprehensive. But, the most expansive civil remedies arise from the amorphous predicate

ing to interstate transportation of stolen property), sections 2341–2346 (relating to trafficking in contraband cigarettes), sections 2421–24 (relating to white slave traffic), (C) any act which is indictable under title 29, United States Code, section 186 (dealing with restrictions on payments and loans to labor organizations) or section 501(c) (relating to embezzlement from union funds), (D) any of-

fense involving fraud connected with a case under title 11, fraud in the sale of securities, or the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in narcotic or other dangerous drugs, punishable under any law of the United States, or (E) any act which is indictable under the Currency and Foreign Transactions Reporting Act.

acts of mail, wire, and securities fraud. Through these vehicles, the congressionally mandated goals of civil RICO can be achieved. Accordingly, the characterization of civil RICO as an action in fraud is consistent with the elements of the cause of action and Congress's purpose in providing that remedy. With fraud forming the predominant predicate offense in civil RICO claims, it is found that this characterization best encompasses the varied elements and the expansive purpose of the statute. Although civil RICO can be categorized as analogous to an unlimited number of state causes of action, this court finds that RICO's claims are most analogous to claims of fraud.

The next step in the *Wilson* analysis is to determine which state statute provides the most appropriate limiting principle. An action in fraud may be governed by La.Civ. Code Article 3492 or 3499. Louisiana Civ. Code Article 3492 provides that "[d]elictual actions are subject to a liberative prescription of one year." Delictual liability arises from, *inter alia*, intentional misconduct, negligence, abuse of right, and liability without negligence. *See* F. Stone *La. Tort Doctrine*, § 229 (1977); *Langlois v. Allied Chemical Corp.*, 258 La. 1067, 249 So.2d 133 (1971); *Hero Lands Co. v. Texaco, Inc.*, 310 So.2d 93 (La.1975). On the other hand, La.Civ.Code Article 3499 provides that "a personal action is subject to a liberative prescription of 10 years." A personal action includes, *inter alia*, an action for breach of contract or breach of fiduciary duty. *E.g., Honeywell, Inc. v. Jimmie B. Guinn, Inc.*, 462 So.2d 145 (La.1985).

An action in fraud may contain elements which are both contractual and delictual. Where the duty breached arises in contract, violation of that duty constitutes a breach of contract. Failure to observe the duty of good faith, which is implicit in all contracts, also constitutes a breach of contract. *See, National Safe Corp. v. Benedict & Myrick, Inc.*, 371 So.2d 792, 795 (La.1979). Alternatively, disregard of a duty imposed by law constitutes a tort and would be subject to the one-year prescriptive period found in La.Civ.Code Article 3492. *See Molero v.*

*Bass*, 477 So.2d 931 (La.App. 4th Cir.1985); *Cherokee Restaurant, Inc. v. Pierson*, 428 So.2d 995 (La.App. 1st Cir.), *cert. denied*, 431 So.2d 773 (La.1983). In this case, the duty giving rise to this action is imposed by 18 U.S.C. § 1961, *et seq.* The violation of this legal duty gives rise to delictual liability and is, therefore, subject to the prescriptive period of one year. Finding the most analogous state substantive action to be governed by La.Civ.Code Article 3492, this Court concludes that plaintiffs' civil RICO action is subject to the liberative prescription of one year.

### c. Policy Considerations

The final step in the *Wilson* analysis is to determine whether the analogous one-year state limitation conflicts with federal policy underlying RICO. First to be considered is the purpose of civil RICO—to eradicate organized crime in the United States by providing new remedies designed to divest those engaged in organized crime of their ill-gotten gains. In achieving this goal, Congress stated that RICO is to be "liberally construed to effectuate its remedial purposes." Pub.L. 91–452, § 904(a), 84 Stat. 947. This guidance has given rise to a cause of action encompassing extremely broad factual scenarios. *See, Sedima, supra.* Additionally, this principle has guided the courts in selecting the longer prescriptive period where alternative periods were contained in analogous state statutes. *See e.g., Burns v. Ersek*, 591 F.Supp. 837 (Minn.1984); *D'Iorio v. Adonizio*, 554 F.Supp. 222 (M.D.Pa.1982). Nevertheless, the rule of broad construction has not been construed to define a fixed limitation within which to bring all civil RICO claims. That limit, a question of policy, necessarily falls on each court having to address this issue.

Louisiana has limited claims sounding in tort to a one-year prescriptive period. This limitation necessarily incorporates policies relating to the realistic life expectancy of evidence, to include disappearance of witnesses, lost documents, and fading memories. *See, United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 356, 62 L.Ed.2d

259 (1979); *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). The one-year bar encourages the prompt presentation and resolution of such claims. This Court does not find any philosophical conflict between the remedial purpose and broad construction of RICO and the policy of timely presentation of such claims. This limitation is not absolute; the one-year prescriptive period commences only where plaintiffs have actually discovered the fraud or, through the exercise of reasonable diligence, should have done so. *See Vigman v. Community National Bank & Trust Co., infra.* Commencement of the prescriptive period conditioned upon actual or constructive knowledge precludes the inequitable application of this relatively short prescriptive period. In this light, the policy underlying the prompt presentation of claims is not found to be inconsistent with federal policies underlying RICO. *See Bowling v. Founders Title Co.*, 773 F.2d 1175 (11th Cir.1985) (Alabama one-year statute of limitations applied to civil RICO claim). Accordingly, the one-year prescriptive bar found in La.Civ.Code Article 3492 governs this civil RICO claim.

■ Factually, plaintiffs admit in affidavit their awareness of the alleged fraud as early as January, 1984. Considering that the initial complaints were filed in September, 1985, plaintiffs' claims for violation of 18 U.S.C. § 1961, *et seq.*, are barred for failure to prosecute timely. Accordingly, the motions for summary judgment on civil RICO claims must be GRANTED.

## SECURITIES CLAIMS

Count 5 of the amended complaint alleges that the defendants violated § 10(b) of the Securities Exchange Act of 1934 and 17 CFR § 240.14A–9 by engaging in the manipulative and fraudulent practice of trading securities in plaintiffs' "daily accumulation funds". The defendants move to dismiss this claim on grounds of prescription and support the motion with submissions outside the pleadings, thereby converting their motion to one for summary judgment. The parties agree that the securities claim is governed by the two-year prescriptive period found in La.R.S. 51:714. The parties disagree, however, whether the prescriptive period commenced greater than two years before suits were filed in September, 1985.

■ Although state law defines the length of the limitations period in this case, federal law determines when the prescriptive period begins to run. *Rawlings v. Ray*, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941); *Vigman v. Community National Bank & Trust Co.*, 635 F.2d 455, 459 (5th Cir.1981); *Bowling v. Founders Title Co.*, 773 F.2d 1175, 1178 (11th Cir.1985). The federal rule is that the prescriptive period begins when the "aggrieved party has either knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof." *Vigman*, 635 F.2d at 459. "The knowledge, whether actual or constructive, which an aggrieved party must have for the purpose of the commencing of the running of a statute of limitations is merely that of 'the *facts* forming the basis of his cause of action,' *see Azalea Meats, Inc. v. Muscat*, 386 F.2d [5,] 9 (5th Cir.1967) (emphasis added), not that of the existence of the cause of action itself." 635 F.2d at 459. Based upon these standards, the uncontroverted facts supporting the defendants' motions must be considered.

■ In their original and amended complaints, John and Paul Davis admit that they closed their accounts with Edwards in September of 1983 "as a result of Defendants' excessive and objectionable trading practices." Records maintained by Edwards and submitted in support of the motions for summary judgment show that written instructions transferring plaintiffs' accounts from Edwards to National Financial Services Corp. were received by Edwards in August, 1983. The uncontroverted affidavit of Virginia Clubbs, the manager of the micro-film/records center for Edwards, establishes that all securities held for the benefit of plaintiffs were physically transferred to National Financial Services Corp. for the benefit of plaintiffs on Sep-

tember 8, 1983, with the exception of 2,000 shares of Strato oil stock, which was transferred at a later time because it was a foreign security the transfer of which was beyond Edwards' control. Facts relating to the requested transfer of securities and the closure of plaintiffs' accounts with Edwards are uncontroverted. Moreover, plaintiffs' statement in pleadings that their accounts were closed as a result of defendants' conduct constitutes a judicial admission which is conclusively binding on the plaintiffs. *White v. Arco/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir.1983); *Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549 (6th Cir. 1986).

Opposing the motion for summary judgment, plaintiffs submit the affidavit of John P. Davis,[3] which provides in pertinent part:

1. That in January of 1984, I became aware that defendant Lloyd D. Tiller, Jr. had lied to me about one of the investments in which he had placed some of my money;

2. After the above discovery, I began to question the truthfulness of Mr. Tiller and became convinced some time later that he had used my account and money (and that of my son) for his own benefit in breach of my contractual agreement with defendant, A.G. Edwards & Sons, Inc.

3. That prior to January of 1984 and specifically during all of 1981, 1982, and 1983 each time I spoke to defendant Tiller, he told me I had nothing to worry about and that despite the reduction in the worth of my account and that of my son, Paul M. Davis, the investments he made were "good" ones.

In conjunction with this affidavit, plaintiffs argue that the monthly statements of account, along with Tiller's assurances regarding the quality of investments, require

that the two-year prescriptive period applicable to securities fraud commence no earlier than January, 1984, when plaintiffs became aware that Tiller had misstated certain facts about their investments. Prior to that time, according to plaintiffs, they had no knowledge of any misrepresentation or omission underlying their claim and, through the exercise of due diligence, could not have known of defendants' fraudulent conduct.

The absence of knowledge, however, is contrary to the Davises' termination of their trading accounts in the summer of 1983. Plaintiffs judicially admit that the accounts were closed because of defendants' excessive and objectionable trading practices. It is inconsistent to admit that the accounts were closed because of wrongful acts by defendants and, at the same time, suggest that they are unaware of the wrongs perpetrated by the defendants. The conduct underlying all claims involved trading of securities, not for the benefit of the Davises, but for the personal gain of the defendants. Misrepresentations or omissions regarding the purpose and quality of such investments form the basis of plaintiffs' claims. The series of objectionable transactions, along with the failure to advise plaintiffs of the true purpose of these transactions, *caused plaintiffs to close their accounts* with Edwards. The judicially admitted purpose or reason for closing the Edwards' accounts establishes knowledge of the facts underlying claims presented by John and Paul Davis in this suit.

Accordingly, greater than two years before the federal complaints were filed, plaintiffs had knowledge of the facts giving rise to their claims. The federal securities claims are, consequently, untimely, and the motion for summary judgment on grounds of prescription must be GRANTED.

---

3. Defendants move to strike affidavits of John P. Davis on grounds that same does not meet the requirements of Fed.R.Civ.P. 56(e). Defendants assert that statements in the affidavit are conclusory and offer no significant probative evidence to issues in this case. Though statements are conclusory, the affidavits are admissible and considered in this Ruling.

## STATE LAW CLAIMS

■ The remaining claims involve breach of contract and unjust enrichment under Louisiana law. It is well settled that, "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state law claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Considering that plaintiffs' claims involve actions which plaintiffs assert are governed by a ten-year prescriptive period under Louisiana law, dismissal by the federal court would not prejudice their rights. Accordingly, upon dismissal of the federal law claims, this Court no longer exercises jurisdiction over the pendent state claims. Thus, the motion to dismiss these claims should be GRANTED.

## FEDERAL RULES CIVIL PROCEDURE 11 SANCTIONS

■ Edwards and Tiller also seek an award of attorney's fees pursuant to Fed. R.Civ.P. 11. That rule provides in pertinent part:

The signature of an attorney or party constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the

amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Defendants assert that the claims of securities fraud in the form of unauthorized purchases and sales of securities are "totally without merit" and further suggest that this suit was directed only at obtaining a "nuisance settlement" from the defendants.[4] The defendants assert that plaintiffs either knew, or could have easily learned, of the true facts regarding the timing of the objectionable conduct and the applicable prescriptive period. Access to monthly statements and/or sales confirmations provided plaintiffs with detailed information regarding stock transactions, to include the number of shares, unit price, and names of stocks purchased. This information, according to defendants, precluded any objective basis upon which plaintiffs' counsel could assert these claims.

A review of defendants' motion for attorney's fees, along with the complete record, does not warrant the imposition of Fed.R. Civ.P. 11 sanctions. First, this ruling demonstrates that the prescriptive period underlying a civil RICO action is yet unsettled. Although analogous state limitation periods suggested by defendants did not exceed two years, the alternative period suggested by plaintiffs, the four-year limitation found in anti-trust laws, does not fall beyond a good faith extension of existing law. Furthermore, turning to factual issues, although plaintiffs' assertions are inconsistent, counsel's advocacy of plaintiffs' position is found to be made in good faith. According to the affidavit of plaintiffs' counsel, the information obtained after reasonable inquiry supported a continuation of the claim and their opposition to defendants' motions for summary judgment. Interpreting Fed.R.Civ.P. 11 in light of the advocacy role of counsel, the motion for attorney's fees must be DENIED.

---

**4.** *Smoky Greenhaw Cotton v. Merrill Lynch, Pierce, Fenner, and Smith, Inc.,* 785 F.2d 1274 (5th Cir.1986), would foreclose any claim that churning is not cognizable in a civil RICO ac-

tion. Defendants apparently recognize the broad scope of this action and limit their argument to the issue of prescription.

An Order consistent with the decisions reached in this Memorandum Ruling shall issue herewith.

## ORDER

For the reasons outlined in the foregoing Memorandum Ruling,

IT IS ORDERED that the motions for summary judgment on claims asserted by John P. and Paul M. Davis arising under 18 U.S.C. § 1961, *et seq.*, on grounds of prescription are GRANTED.

IT IS FURTHER ORDERED that the motions for summary judgment on claims by Paul M. and John P. Davis arising under the Securities Exchanges Act of 1934 on grounds of prescription are GRANTED.

IT IS FURTHER ORDERED that the motions for attorney's fees pursuant to Fed.R.Civ.P. 11 are DENIED.

IT IS FURTHER ORDERED that all remaining claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction.