Joseph VIGMAN et al.,
Plaintiffs–Appellants,

v.

COMMUNITY NATIONAL BANK &
TRUST CO. et al.,
Defendants–Appellees.

No. 78–3656.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1981.

---

Edward A. Perse, Irving E. Dunn, Miami, Fla., for plaintiffs–appellants.

James A. Dixon, Jr., Mitchell Lee Lundeen, Miami, Fla., for Community Nat. Bank & Trust Co.

Fowler, White, Burnette, Hurley, Banick & Strickroot, Curtis Carlson, Miami, Fla., for Bache & Co.

Before HENDERSON, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

The appellants, Joseph Vigman, Rae Vigman, Barbara H. Vigman, Marlene Vigman Rudolph, and Richard J. Rudolph, appeal the district court's granting of summary judgment in favor of appellees, Community National Bank & Trust Co. and Bache & Co. The district court granted summary judgment on the ground that appellants' claims under § 10(b) of the Securities Exchange Act of 1934[1] and Rule 10b–5 promulgated thereunder,[2] § 7 of the Act[3] and Regulation U promulgated thereunder,[4] and Rules 401 and 405 of the New York Stock Exchange, were barred by the Florida statute of limitations. We affirm.

## I. Factual Background

The facts of this case are undisputed. On November 8, 1968, January 12, 1969, January 14, 1969, and February 10, 1969, appellants borrowed a total of $1,000,000.00 from appellee Community National Bank for the purpose of investing the money in securities. Each of the loans was secured by stocks pledged as collateral by appellants to the Bank. Appellant Joseph Vigman asserts that he was the real party in interest as to each loan transaction.

In connection with each of these loans, appellants executed and delivered to the Bank a Form U–1, Federal Reserve System "Statement of Purpose of Proceeds of a Stock–Secured Extension of Credit by a Bank." According to these statements, the purposes of the loans were to purchase property, pay income tax, use for family investment, and buy real estate. None of the statements of purpose indicated that the true purpose of the loan was to purchase securities and speculate in the stock market. The trading was done at appellee Bache, a securities brokerage firm.

Joseph Vigman has acknowledged that on at least one occasion he was aware that the statement of purpose form was false. Further, on January 31, 1969, Vigman signed and delivered a letter to the president of appellee Bank again falsely describing the purposes of the loans as set out above.

During 1970 and 1971, the Bank exercised its rights under the promissory notes and security agreements by selling the securities held as collateral and applying the proceeds of the sales to pay off the various loans. Joseph Vigman was mailed and received "Advice of Charge" forms reflecting each such transaction. The last of these forms was dated February 22, 1971, and indicated that all of the loans had been completely paid off.

In January, 1973, Joseph Vigman contacted a lawyer regarding other legal matters and mentioned his dissatisfaction with the stock sales. Vigman maintains that he then first learned he might have a cause of action against appellees.

On January 12, 1973, appellants filed an action in a Florida state court, alleging the same facts contained in their present complaint. The state court action was dismissed on interlocutory appeal by the Florida Third District Court of Appeal for lack of subject matter jurisdiction. *Community National Bank & Trust Co. v. Vigman*, 330 So.2d 211 (Fla.Dist.Ct.App.1976), *cert. denied*, 341 So.2d 294 (Fla.1976).

Thereafter, on December 30, 1976, appellants filed the present three–count action in federal district court in the Southern District of Florida. Count I alleges violation of § 7 of the Securities Exchange Act,[5] and

---

1. 15 U.S.C. § 78j(b) (1976).

2. 17 C.F.R. § 240.10(b)–5 (1980).

3. 15 U.S.C. § 78g (1976).

4. 12 C.F.R. § 221.1 *et seq.* (1980).

5. Section 7 provides in pertinent part:

It shall be unlawful for any person ... to extend or maintain credit or arrange for the extension or maintenance of credit for the purpose of purchasing or carrying any security, in contravention of such rules and regulations as the Board of Governors of the Federal Reserve System shall prescribe....
15 U.S.C. § 78g(d) (1976).

also of Regulation U which regulates the extension of credit by banks for the purpose of purchasing or carrying margin stocks.[6] Count II alleges violations of Rule 10b–5, including the use of deceptive devices and the breach of fiduciary duties. Count III alleges that appellees violated New York Stock Exchange Rules 401 and 405, the "Know Your Customer" rule which requires exchange members to use due diligence in the conduct of a customer's account.[7] Appellants seek $900,000.00 in damages plus an unspecified sum for lost interest and investment opportunity.

After filing answers to appellants' complaint, appellees moved for summary judgment on the ground that appellants' claims were barred by the applicable Florida statute of limitations. Granting appellees' motion for summary judgment, the district court held that appellants' causes of action were barred "even under the longest [Florida] statute of limitations conceivably applicable," the four–year fraud statute of limitations under § 95.11(3)(j) of the Florida Statutes. Fla.Stat.Ann. § 95.11(3)(j) (West Supp.1980).[8] Appellants now challenge the district court's granting of summary judgment in favor of appellees.

## II. Accrual of Causes of Action

█ In passing upon whether the district court erred in granting summary judgment for appellees, we must first determine when appellants' causes of action accrued. Although federal courts look to state law to determine the applicable limitations period,[9] the question of when a cause of action accrues, and thus when the limitations peri-

---

6. Regulation U, promulgated under § 7, provides in pertinent part:

[N]o bank shall extend any credit secured directly or indirectly by any stock for the purpose of purchasing or carrying any margin stock in an amount exceeding the maximum loan value of the collateral, as prescribed from time to time. . . .

12 C.F.R. § 221.1(a)(1) (1980).

Appellants' action under Regulation U is against both the Bank and Bache. Regulation U, however, applies to extension of credit only by banks. As to an action against a broker such as Bache, Regulation T, 12 C.F.R. § 220.1 et seq. (1980), controls. It deals with the extension of credit by brokers and dealers for the purpose of stock purchases. Appellants made no allegation against Bache under Regulation T.

It is unclear, however, whether appellants even have a right of action against the Bank under Regulation U. See McNeal v. Paine, Webber, Jackson & Curtis, Inc., 598 F.2d 888, 890, n.3 (5th Cir. 1979) (discussing the existence of an implied private right of action under § 7 and Regulation T). We need not resolve this issue, however, since any such private right of action would be barred under either of the two Florida statutes of limitations which might govern such an action. See part III A of this opinion, infra.

7. Whether there is a private right of action for a violation of Rules 401 and 405 of the New York Stock Exchange is unclear. Some courts have found that such a cause of action exists. See, e. g., Buttrey v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 410 F.2d 135 (7th Cir. 1969), cert. denied, 396 U.S. 838, 90 S.Ct. 98, 24 L.Ed.2d 88 (1969); McMillan v. E. F. Hutton & Co., Inc., 399 F.Supp. 1153 (N.D.Cal.1975); Fa-

turik v. Woodmere Securities, Inc., 431 F.Supp. 894 (S.D.N.Y.1977); Wolfson v. Baker, 444 F.Supp. 1124 (M.D.Fla.1978), aff'd on other grounds, 623 F.2d 1074 (5th Cir. 1980). Other courts, however, have held to the contrary. See, e. g., Jablon v. Dean Witter & Co., 614 F.2d 677 (9th Cir. 1980); Birotte v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 468 F.Supp. 1172 (D.N.J.1979); Plunkett v. Dominick & Dominick, Inc., 414 F.Supp. 885 (D.Conn. 1976); Piper, Jaffray & Hopwood, Inc. v. Ladin, 399 F.Supp. 292 (S.D.Iowa 1975). This Court has not decided the question. We need not do so now, however, since any right of action under Rules 401 and 405 on the part of appellants would be barred under Florida law. See part III B of this opinion, infra.

8. We note that the limitations period under Florida law for actions for fraud was three rather than four years prior to January 1, 1975. This provision was in effect at the time of the accrual of appellants' causes of action on February 10, 1969. See part II of this opinion, infra. The statute was amended to a four year limitation on January 1, 1975, by § 95.11(3)(j). Fla.Stat.Ann. § 95.11(3)(j) (West Supp.1980). Since the date of the accrual of a cause of action is the relevant time under federal law for determining the applicable state statute of limitations, McNeal v. Paine, Webber, Jackson & Curtis, Inc., 598 F.2d 888, 892, n.9 (5th Cir. 1979), section 95.11(5)(d), rather than the section relied upon by the district court, § 95.-11(3)(j), is the longest Florida statute of limitations conceivably applicable to appellants' claims under § 10(b) and § 7.

9. See part III of this opinion, infra.

od commences running, is governed by federal law. *Rawlings v. Ray*, 312 U.S. 96, 61 S.Ct. 473, 85 L.Ed. 605 (1941); *Azalea Meats, Inc. v. Muscat*, 386 F.2d 5 (5th Cir. 1967). Under federal law, a cause of action under § 10(b) and Rule 10b–5, or one under § 7 and Regulation U, accrues when the aggrieved party has either actual knowledge of the violation or notice of facts which, in the exercise of due diligence, would have led to actual knowledge thereof. *Azalea Meats, Inc. v. Muscat*, 386 F.2d at 8–9 (§ 10(b) action); *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888, 893 n.11 (5th Cir. 1979) (§ 10(b) and § 7 actions); *Goldenberg v. Bache & Co.*, 270 F.2d 675, 681 (5th Cir. 1959) (§ 7 action). The same principle would apply to the accrual of a cause of action under Rules 401 and 405 of the New York Stock Exchange.

■ Applying this principle to the facts of the instant case, we find that appellants' causes of action accrued on February 10, 1969. On that date, appellants borrowed the last of the $1,000,000 from the Bank which they used to purchase securities. By this time, appellants had executed and delivered to the Bank all seven of the knowingly false "Statement of Purpose" forms. Further, by February 10, 1969, Vigman had sent the letter to the Bank falsely verifying the purposes of the loans as falsely stated in the "Statement of Purpose" forms. The latest date on which the Bank and Bache could have committed acts of fraud or employed manipulative or deceptive devices in connection with the sale of securities, in violation of § 10(b) and Rule 10b–5, was February 10, 1969. Similarly, February 10, 1969, was the latest date on which the Bank could have extended credit in violation of the margin requirements of § 7 and Regulation U, and on which Bache could have failed to exercise due diligence in the conduct of a customer's account, in violation of New York Exchange Rules 401 and 405. Accordingly, since appellants had actual knowledge of the above facts by February 10, 1969, we hold that appellants' causes of action accrued on that date.

■ In so holding, we reject appellants' contention that their causes of action did not accrue until they specifically learned from their lawyer in January of 1973 that they might have a cause of action against the Bank and Bache. The knowledge, whether actual or constructive, which an aggrieved party must have for the purpose of the commencing of the running of a statute of limitations is merely that of "the *facts* forming the *basis* of his cause of action," *see Azalea Meats, Inc. v. Muscat*, 386 F.2d at 9 (emphasis added), not that of the existence of the cause of action itself.

### III. Applicable Limitations Period

Having determined when appellants' causes of action accrued, we now must determine which statute of limitations applies to each claim in order to determine whether the district court correctly granted summary judgment to appellees on each claim.

■ The federal securities laws do not in terms provide for a private right of action under either § 10(b) or § 7. The federal securities laws therefore do not contain any limitations period that is expressly applicable to possible claims under § 10(b) and Rule 10b–5, or under § 7 and Regulation U. Similarly, Rules 401 and 405 of the New York Stock Exchange do not expressly create a private right of action thereunder, and accordingly contain no stated limitations period. When federal law contains no limitations period applicable to a particular federal cause of action, federal courts are to apply the forum state's limitations period applicable to the state cause of action that bears the closest substantive resemblance to the federal cause of action. *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d at 891–92; *Nortek, Inc. v. Alexander Grant & Co.*, 532 F.2d 1013, 1015 (5th Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). We therefore must determine which Florida cause of action most closely resembles each of appellants' alleged federal causes of action. We then can decide which Florida limitations period applies to each claim, and thus whether each claim is barred under the applicable limitations period.

## A. The § 10(b) and § 7 Claims

The causes of action under Florida law which bear the closest substantive resemblance to actions under § 10(b) and § 7 are that under § 517.21 of the Florida Statutes, Fla.Stat.Ann. § 517.21 (West 1972),[10] for violations of the sale of securities provisions of the Florida blue sky laws, and that for common law fraud. Under Florida law, the two–year statute of limitations period provided in § 517.21 of the Florida Statutes applies to actions for violations of the Florida sale of securities law, while the three–year statute of limitations period under § 95.11(5)(d), Fla.Stat.Ann. § 95.11(5)(d) (West 1960),[11] governs actions for fraud. Hence, in determining which Florida limitations period to apply to appellants' claims

under § 10(b) and § 7, a choice usually must be made between the Florida two–year statute of limitations contained in § 517.21 and applicable to actions for violations of the Florida sale of securities law, and the Florida three–year statute of limitations provided in § 95.11(5)(d) of the Florida Statutes and applicable to actions for fraud.[12]

■ We do not need to choose between these two Florida statutes of limitation, however, since appellants' actions under § 10(b) and § 7 are barred under either limitations period.[13] As discussed above, appellants' § 10(b) and § 7 causes of action accrued on February 10, 1969. Appellants therefore had until February 10, 1971 under the Florida two–year statute of limitations

10. Section 517.21 of the Florida Statutes provides, in pertinent part:

(1) Every sale made in violation of any of the provisions of [Chapter 517] shall be voidable at the election of the purchaser; and the person making such sale and every director, officer or agent of or for the seller, if the director, officer or agent shall have personally participated or aided in any way in making the sale, shall be jointly and severally liable to the purchaser in an action at law in any court of competent jurisdiction upon tender of the securities sold or of the contract made, for the full amount paid by such purchaser, with interest, together with all taxable court costs and reasonable attorney's fees; provided, that no action shall be brought for the recovery of the purchase price after two years from the date of such sale. . . .

Fla.Stat.Ann. § 517.21 (West 1972).

It should be noted that § 517.21 was repealed on July 1, 1976, by Chapter 76–168, § 3, of the Laws of Florida of 1976. This repeal is of no significance to the case at hand, however, since appellants' causes of action had accrued (and expired) by the time of the repeal.

11. As discussed in note 8, *supra*, the three–year limitations period of § 95.11(5)(d) of the Florida Statutes for actions for fraud was changed to four years on January 1, 1975, by § 95.11(3)(j). However, since appellants' cause of action accrued prior to this change, we consider the three–year period of § 95.11(5)(d) rather than the four–year period of § 95.11(3)(j) in our analysis.

12. In *Goldenberg v. Bache & Co.*, 270 F.2d 675 (5th Cir. 1959), this Court applied the limitations period provided in § 29(b) of the Securities Exchange Act of 1934 to a § 7 claim. Section 29(b) provides a limitations period of one year after discovery of a securities sale or

purchase made in violation of § 15(c)(1) of the Act, and of three years after such violation.

The district court did not accept the applicability of the *Goldenberg* case, and there appears to be considerable justification for the district court's decision. *Goldenberg* involved a case alleging violations of both § 7, 15 U.S.C. § 78g (1976), and § 15, 15 U.S.C. § 78o (1976), of the Act. It is clear that the limitations period of § 29(b) by its own terms applies to actions under § 15(c)(1), and the *Goldenberg* court was correct in applying the federal limitations of 29(b) to that action. Its action in going on to apply the same federal statute of limitations to the § 7 claim was at least doubtful under the wording of the provision itself.

In any event, even if the one or three years limitations periods contained in § 29(b) of the Federal Act were applicable, appellants' cause of action under § 7 is still barred.

13. We note that the Florida two–year statute of limitations of § 517.21 rather than the Florida three–year statute of limitations of § 95.-11(5)(d) probably would apply to appellants' § 10(b) and § 7 claims. *Hudak v. Economic Research Analysts, Inc.*, 499 F.2d 996 (5th Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Nortek, Inc. v. Alexander Grant & Co.*, 532 F.2d 1013, 1015 (5th Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 742, 50 L.Ed.2d 754 (1977). But compare *McNeal v. Paine, Webber, Jackson & Curtis, Inc.*, 598 F.2d 888 (5th Cir. 1979), involving somewhat dissimilar Georgia statutes and finding the more lengthy limitations period under the Georgia fraud statute applicable. In this case, however, even if the longer statutory Florida period relating to fraud (three years) were applied, appellants' claims under § 10(b) and § 7 still would be time–barred.

contained in § 517.21, and until February 10, 1972 under the Florida three–year statute of limitations provided in § 95.11(5)(d), to bring their § 10(b) and § 7 claims either in federal court or in Florida state court. Since they did not bring suit in federal court until December 30, 1976, or in Florida state court until January 12, 1973, appellants' present actions under § 10(b) and § 7 are barred by both the two–year and three-year Florida statute of limitations. Because there is no genuine issue of a material fact as to this matter, we hold that the district court properly granted summary judgment in favor of appellees on appellants' § 10(b) and § 7 claims.

**B. The Claim Under Rules 401 & 405**

■ It is unclear whether a private right of action exists under Rules 401 and 405 of the New York Stock Exchange.[14] Even if a right of action under these rules does exist, however, and without analyzing the various Florida statutes of limitation which might apply to such an action, appellants' claim would be barred by even the longest Florida limitations period that possibly could apply, the four–year limitations period applicable to actions for relief not specifically provided for in the other Florida statutes of limitation. Fla.Stat.Ann. § 95.11(4) (West 1960).[15] Appellants' cause of action under Rules 401 and 405, if it existed, accrued on February 10, 1969; but appellants did not bring suit in federal court until December 30, 1976, over six years later.

■ Appellants did manage to bring suit in Florida state court within the four–year limitations period of § 95.11(4), thereby raising the possibility that they could rely on the Florida tolling provision of § 95.06, Fla.Stat.Ann. § 95.06 (West 1960), in order to refile in federal district court after the four–year period of § 95.11(4) would otherwise have expired. Appellants may not rely on the Florida tolling statute, however. First, it is doubtful whether the Florida state court's dismissal of appellants' state

court action for lack of subject matter jurisdiction constituted a "judgment" within the meaning of § 95.06. Second, and more important, appellants failed subsequently to bring a suit in federal court within the time prescribed by the Florida savings clause after the tolling provision was repealed. Section 95.06 was repealed on January 1, 1975, by § 95.051, Fla.Stat.Ann. § 95.051 (West Supp.1980), and a one–year savings clause was provided, in § 95.022 of the Florida Statutes, Fla.Stat.Ann. § 95.022 (West Supp.1980), for actions barred when § 95.051 became effective but which would not have been barred under § 95.06. Appellants therefore had until January 1, 1976, to bring their state court action in federal court. Their failure to bring such action until December 30, 1976 rendered their present action under Rules 401 and 405 barred. Since no genuine issue of a material fact exists on this point, we find that the district court properly granted summary judgment in favor of appellees on appellants' claim under Rules 401 and 405.

We have thoroughly considered appellants' remaining arguments and contentions on this appeal, and find them lacking in merit.

For the above reasons, we affirm the district court's granting of summary judgment in favor of appellees on all of appellants' claims.

AFFIRMED.

**14.** *See* note 7, *supra*.

**15.** Section 95.11(4) was amended on January 1, 1975, by § 95.11(3)(p), Fla.Stat.Ann. § 95.-11(3)(p) (West Supp.1980).