**Grady L. HALLMAN, Plaintiff,**

v.

**NORTHWESTERN NATIONAL INSURANCE COMPANY, et al., Defendants.**

**Civ. A. No. H–89–1997.**

United States District Court,
S.D. Texas,
Galveston Division.

June 6, 1991.

---

Frank V. Ghiselli, Jr., Houston, Tex., for plaintiff.

David G. Matthiesen, Funderburk & Funderburk, Arthur E. Zuehlke, Tillman & Pribilski, Kathy Dawn Patrick, Gibbs & Ratliff, Jenkens & Gilchrist, P.C., Houston, Tex., for defendants.

### FINAL SUMMARY JUDGMENT

KENT, District Judge.

Pending before the Court is the Scott Defendants' Motion for Summary Judgment or To Dismiss for Failure to State a Claim (Instr. # 41), filed on January 16, 1990. For the reasons set forth herein, this Court hereby GRANTS the Defendants' Motion for Summary Judgment as to the Federal securities fraud issues and DISMISSES the remaining pendent state law claims WITHOUT PREJUDICE.

*The Facts*

This suit is the result of the Plaintiff's series of investments in certain "research & development" [R & D] limited partnerships during 1981–82.. These investments were supposedly based on the advice re-

ceived from his financial investment advisor, Mr. Schultz, who imparted his alleged personal knowledge of these particular investments to the Plaintiff, who is a doctor. This personal knowledge was allegedly imparted to Mr. Schultz by Mr. David R. Scott, a Defendant who was/is evidently the director or administrator of these "R & D" limited partnerships.

The investments consisted of some cash payments, some short term notes, and some non-negotiable long term notes. Mr. Schultz allegedly assured the Plaintiff that he would never have to pay back the long term notes because the return on the investments would take care of them.

The prospecti of these investment deals however, contained cautioning or warning information for potential investors designed to alert them to the possible risks facing them in these investments. These warnings were alleged to have been verbally contradicted by Mr. Schultz, who spoke glowingly of Mr. Scott's assurances to him of the soundness and lucrative nature of these investments. But, rather than heeding this inconsistent information alerting him to potential problems with these particular investments, the Plaintiff evidently assumed the discouraging language was merely a formality, necessarily included to protect the offeror from possible liability. The Plaintiff obviously failed to consider why these companies might try to insulate themselves from liability. He stated that he believed that investors would never invest if they did not receive encouraging information which would necessarily contradict the cautionary language placed in offering memoranda to limit exposure to liability. Although probably true, this should have placed the Plaintiff on notice to investigate these investments very carefully, especially considering the inconsistent information he had received from Mr. Schultz.

■ If the inconsistent information the Plaintiff received at the outset of the investments did put him on notice to investigate, the statute of limitations would clearly have run by 1986 at the latest, and thus this action would be clearly time-barred.

But, giving the Plaintiff the benefit of the doubt, that a reasonable person would not have been so alerted by those inconsistencies that he or she would have made additional investigations before investing, the statute of limitations clearly began to run during 1984, when several events occurred which should have put the doctor on notice that everything was not "fine" with his investments.

In May of 1984, the Plaintiff executed a long term negotiable note to replace the non-negotiable notes originally given in payment for the investments. He was allegedly persuaded to do this in exchange for $50,000 cash and the promise that these notes would not be sold, but would be pledged in order to receive additional funding for the research projects. When he never received the money, but only written assurances to the effect that the companies were trying to raise the money, he believed it was being used for R & D business purposes. The Plaintiff's attitude appears to have been that since he did not really need it and it was such a small percentage of his overall investment, that it just was not a significant problem at the time. Also, counsel concedes that Plaintiff was very busy with his medical practice, and the Court can only assume he was too busy to monitor his investments. In any event, this Court feels that the failure to receive the $50,000 promised in exchange for the execution of certain long term negotiable notes should have raised the Plaintiff's suspicions so that he was or clearly should have been put on notice of possible problems with his investments.

Even if the failure to receive the promised sum of money within a reasonable period was not enough to give the Plaintiff notice of possible problems, the discovery, in the Summer of 1984, that his investment advisor, Mr. Schultz, had defrauded him on other investments should have put him on notice as to questions of validity of these investments as well. Despite suing Schultz for fraud, the Doctor made no further investigations into the investments in the instant case. The Plaintiff based his failure to check into the instant investments on the

fact that Mr. Schultz was given money to invest on the other investments, which he failed to do; whereas in the instant investments, the Doctor had made the checks out directly to the companies invested in, and he therefore knew they had received his money and that he had actually invested in them. Knowing that the statements Mr. Schultz made at the outset of these particular investments were inconsistent with the offering brochures, and in view of the fact that Mr. Schultz had lied to him and defrauded him as to other investments, and in further view of his actual failure to receive the promised funds, the Plaintiff should reasonably have suspected foul play and have undertaken further investigation. Instead, the Plaintiff chose to believe the Defendants' "glowing" letters that all was well, despite the fact that the Defendants were unable to pay him the money as promised and eventually stopped mentioning it in their letters altogether.

By the Summer of 1984, the Court asserts the limitations period had definitely begun to run. The combination of these occurrences would clearly have put a reasonable person on notice that there might be problems with these investments that should be further investigated. The Court feels the law is clear that the limitations period begins to run when a person either knew or should have known of possible problems with his or her investments which would cause a reasonable person to further investigate the situation.

The Plaintiff claims that it was only after he received notice in late 1988 that his note had been sold before maturity (to a holder in due course), and after the receipt of notice from other limited partners who were trying to hire a law firm to investigate possible fraudulent conduct on the part of the Defendants, that the Plaintiff sensed possible problems with these particular investments, and contacted an attorney to investigate. It was at this point, in early 1989, that the Plaintiff finally realized the extent of the problems with these investments and filed suit. Unfortunately for the Plaintiff, in the Court's view, he had waited too long from the time he should have realized that there were problems to the time he actually filed suit, and the statute of limitations had already run.

The Court realizes that the Plaintiff probably did not have actual knowledge of this foul situation until 1988 or 1989, and truly sympathizes with the plight of this Plaintiff. However, considering all of the events which should have raised suspicions in the Doctor's mind as to the integrity of his investments, this Court firmly believes that, at least by the end of 1984, the Plaintiff had or clearly should have had knowledge of enough inconsistencies in connection with these investments that he was put on notice to look more closely into his investments. The limitations period had begun, and the Plaintiff's failure to investigate when he received this constructive notice did not toll the statute for any reason.

The Court expressly notes that it realizes doctors are very valuable members of society, that they work long hard hours and that they might not possess either the energy or the inclination to closely monitor every aspect of every investment they make. However, and while the Court does not in any way intend to ratify the conduct of Defendants herein, this Court is not a guardian, and despite its considerations for the Doctor's lofty profession, it nevertheless holds doctors to the same standards as everyone else—that of reasonable people.

The purpose of a limitations period is to impose a duty to closely monitor one's affairs and to act with reasonable speed and diligence to investigate problems with investments, etc. The law does not require the Plaintiff to have actual knowledge of any fraudulent conduct, but only mandates that he *should have known, using reasonable diligence* to care for his business affairs.

Summary Judgment Generally

Summary judgment is proper where no genuine issue as to any material fact exists. Fed.R.Civ.P. 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The Supreme Court has clearly stated that there is no genuine issue of fact where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). In *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291, 294 (5th Cir.1987), the court, quoting from *Matsushita,* supra, and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), declared:

"... once the movant has informed the district court of the basis of its motion and identified those portions of the record which it believes demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. A sufficient showing cannot rest on mere allegation or denials in the pleadings, but must set forth specific facts that establish an issue for trial."

■ Facts are material for summary judgment purposes where they constitute a legal defense, or their existence or nonexistence might affect the result of the action, or when resolution of issues they raise is so essential that the party against whom it is decided cannot prevail. *Odom v. Tripp,* 575 F.Supp. 1491 (D.C.Mo.1983).

The Supreme Court directs a judge when ruling on a summary judgment motion to believe the evidence of a non-moving party and to draw all justifiable inferences in his favor. Credibility determinations are to be left to the trier of fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). A judge may assess the persuasiveness of the evidence and may discount unpersuasive evidence as unspecific or immaterial, but not unbelievable. *Leonard,* 828 F.2d at 294. "The inquiry performed is the threshold inquiry of determining whether there is the

need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

Acknowledging that many courts have misinterpreted and incorrectly applied *Celotex,* the Court in *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991), attempted to clarify the standards for granting summary judgment motions after *Celotex:*

"To summarize, the *Adickes [v. S.H. Kress & Co.,* 398 U.S. 144, 26 L.Ed.2d 142 (1970)]* rule remains the general rule. The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment. *Celotex* did not change the general rule. *Celotex* simply holds that under certain circumstances the movant may meet its Rule 56 burden without negating an element of the non-moving party's claim and that under such circumstances it is sufficient to point to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden. Even after *Celotex* it is never enough to simply state that the non-moving party cannot meet its burden at trial."

In *Petroleum Helicopters, Inc. v. Avco Co.,* 930 F.2d 389, 391 (5th Cir.1991), the Fifth Circuit, quoting from *Anderson, supra,* and *Celotex, supra,* recently stated: "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there is no genuine issue of material fact" ... Moreover, the plaintiff is required to 'designate specific facts showing that there is a genuine issue for trial.' (citations omitted).

Summary Judgment Applied To The Instant Case

In the instant case, the Defendants raised the lack of evidence issue by pointing to statements made by the Plaintiff himself. In meeting their summary judgment burden, the Defendants, in order to prove that the notice period began in 1984, and that he should have exercised reasonable diligence at that time to conduct further investigations, offer the statements of the Plaintiff himself. The Plaintiff has failed to controvert the Defendants' assertions, or to show any evidence which would lead this Court to determine that there was a genuine issue of material fact left to be decided. The non-movant, the Plaintiff, has not made a showing sufficient to establish the existence of an element essential to his case. Therefore, the Defendant's Motion for Summary Judgment is proper and will be GRANTED.

■ Most courts appear to hold a plaintiff to the standard clearly stated by the Fifth Circuit in *Breen v. Centex Corp.*, 695 F.2d 907, 911 (5th Cir.1983), that the limitations period for RULE 10b–5 violations begins to run when the plaintiff discovers, *or in the exercise of reasonable diligence should discover*, the alleged violations or alleged fraudulent conduct. (Emphasis added.)

The Seventh Circuit, in *Peterson Industries, Inc. v. Lake View Trust & Sav. Bank*, 584 F.2d 166 (7th Cir.1978) bluntly states, "[a] person charging fraud may not close his eyes to obvious facts, enter into a transaction and then charge that he was deceived by words of the other party."

In *Cook v. Avien*, 573 F.2d 685 (1st Cir. 1978), the First Circuit confronting a situation similar to the instant case, thoroughly and succinctly set forth the applicable law on this subject. In concluding that the "storm warnings" were sufficient to initiate the running of the statute of limitations on this sort of cause of action, the Court stated:

"once the 'inquiry notice' of possible omissions provided by the above facts had triggered the duty to exercise reasonable diligence, the statutory period

did not 'await appellant's leisurely discovery of the full details of the alleged scheme' ... In determining whether the investor has made reasonable inquiries, a court must consider, inter alia, the nature of the misleading statements alleged, the opportunity to discover the misleading nature of the statements, and the subsequent actions of the parties." (citations omitted) 573 F.2d at 696, 697.

In the footnotes, the Court was even more explicit:

"The ordinary investor's due diligence burden may in fact go beyond the duty to make a reasonable inquiry. An investor may also be required to 'apply his common sense to the facts that are given to him' in determining whether further investigation is needed. See note, *The Due Diligence Requirement for Plaintiffs under the Rule 10b–5*, 1975 Duke L.J. 753, 779." 573 F.2d at 696, note 24.

"... the duty of reasonable diligence is an obligation imposed by law solely under the peculiar circumstances of each case, including the existence of a fiduciary relationship, concealment of the fraud, opportunity to detect it, position in the industry, sophistication and expertise in the financial community, and knowledge of related proceedings." [Quoting Chief Judge Leahy of *Tobacco & Allied Stocks v. Transamerica Corp.*, 143 F.Supp. 323, 331 (D.Del.1956), aff'd 244 F.2d 902 (3rd Cir.1957)]. *Id.* at 697 note 25.

The Fifth Circuit addressed this question again in *Jensen v. Snellings*, 841 F.2d 600 (5th Cir.1988), where it reiterated the standard set forth in *Breen*, stating:

"The requisite knowledge that a plaintiff must have to begin the running of the limitation period is merely that of the facts forming the basis of his cause of action, ... not that of the existence of the cause of action itself." (emphasis in original, citations omitted) 841 F.2d at 606.

The Court went on to delineate what is expected of a plaintiff under these circumstances:

"The requirement of diligent inquiry imposes an affirmative duty upon the potential plaintiff. Plaintiff is not permitted a 'leisurely discovery of the full details of the alleged scheme.' A plaintiff who has learned of facts which would cause a reasonable person to inquire further must proceed with a reasonable and diligent investigation, and is charged with the knowledge of all facts such an investigation would have disclosed. Investors are not free to ignore 'storm warnings' which would alert a reasonable investor to the possibility of fraudulent statements or omissions in his securities transaction. Our emphasis on the duty of due diligence comports with the policy underlying statutes of limitation. They are intended to ensure fairness to defendants against 'claims that have been allowed to slumber.... the right to be free of stale claims in time comes to prevail over the right to prosecute them.'" (citations omitted). *Id.* at 607.

Thus, the Fifth Circuit found that the investors in *Jensen* had either inquiry notice or actual notice of the alleged fraudulent conduct long before suit was ever filed.

The First Circuit also confronted a situation very similar to the instant case, in *Kennedy v. Josephthal & Co., Inc.*, 814 F.2d 798 (1st Cir.1987), in which there were glaring differences between the language contained in the offering memorandum and the statements made by the broker. Stating that inquiry notice is triggered by evidence of the *possibility* of fraud, not full exposition of the scam itself, the Court found the appellants were on inquiry notice from the time they received the prospectus and spoke with the broker prior to the closing. The Court found that:

"... a reasonable investor would have at least enquired as to this glaring difference, but instead appellants, according to their own version, relied upon the more favorable assessment. A 'misleading statement or significant omission,' however is the most logical explanation for the disparity between the written representations of the prospectus and the oral representations of Sinclair (broker)....

The notice appellants were on triggered the duty to exercise reasonable diligence." (citations omitted) 814 F.2d at 802, 803.

The Court also found that since both the broker's statements and the offering memorandum's assertions could not be true at the same time, then logically, one statement or the other had to have been false.

"Any attempt to resolve these contradictions should have uncovered the fraud or, at a minimum, dissuaded appellants from this folly. The appellants not only had, but were handed with the offering memorandum, ample opportunity to discover that there were misleading statements or omissions being made." *Id.*

Thus, the Court held that having been placed on inquiry notice but not having exercised reasonable diligence in investigating the fraud, the appellants could not claim that the doctrine of fraudulent concealment tolled the statute of limitations.

Controversy Over Limitations Period

As a result of a controversy among the Circuits as to the exact length of the limitations period for Federal securities fraud and Rule 10–b violations, the Supreme Court has granted certiorari to clear up the confusion. However, the pending struggle is between a two year and a four year period of limitations and how that period is to be determined. Because this Court has determined the Plaintiff's claim was filed more than four years from the time when he should have been alerted to problems with his investments, the Supreme Court's decision in the pending case should have *no* bearing on the instant case, and there are consequently no grounds for the issuance of a stay pending the outcome of that decision.

Conclusion

In the instant case, this Court has given the Plaintiff the benefit of the doubt as to the time when the period of limitations should have begun to run. Instead of measuring the period from the outset of the investment, when the Plaintiff was faced with manifestly contradictory statements in the offering memoranda and from Schultz, the Court believes the period should begin

to run in 1984, when the Plaintiff was faced with evidence of Schultz' fraud as to other investments, and when the companies failed to pay him the promised $50,000.

The Court takes into account all of the factors set forth by the courts in the above cited cases in making this determination. The Plaintiff had plenty of time to become suspicious and do some investigating, but he chose to ignore the possibilities facing him from these investments until he was confronted with actual knowledge of the problems. He ignored the "storm warnings" for too long. Now, the rights of the Defendants to be free from stale claims take precedence.

For the reasons stated above, and based on the above cited case law, this Court finds that the Plaintiff's security fraud claims are time-barred and should be dismissed. The Court makes no determination as to the merits of the pendent indemnity claims, because with the demise of the federal question claim, jurisdiction shifts to the state courts for those claims. IT IS THEREFORE,

ORDERED that the Scott Defendants' Motion for Summary Judgment is HEREBY GRANTED as to the securities fraud claims. All other pendent state law claims pertaining to indemnity issues are HEREBY DISMISSED WITHOUT PREJUDICE, to be refiled in state court by the Plaintiff if he so chooses, and as may appear to him proper in the circumstances.